UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL WEASE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-4107-B |
| | § | |
| OCWEN LOAN SERVICING, LLC, and | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendants. | § | |
| ─────────────────────── | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC, and | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendants/Counter-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| MICHAEL WEASE, | § | |
| | § | |
| Plaintiff/Counter-Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants/Counter-Plaintiffs Ocwen Loan Servicing, LLC[1] and Wells Fargo Bank, N.A. (collectively "Ocwen"[2])'s Amended Motion for Attorneys' Fees (Doc. 193). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

---

[1] Since this litigation began, Ocwen Loan Servicing, LLC merged to become PHH Mortgage Corporation. *See* Doc. 193, Mot., 1.

[2] For clarity, the Court refers to Defendants/Counter-Plaintiffs collectively as "Ocwen" though they are two distinct entities.

I.

BACKGROUND

This case concerned a mortgage dispute. In 2003, Plaintiff/Counter-Defendant Michael Wease ("Wease") executed a Note and Security Instrument using his home as collateral to obtain a home equity loan.[3] Doc. 69, 3d Am. Compl., ¶¶ 7–8, 18; Doc. 195-1, Tex. Home Equity Note, 1. Wease initiated this action in response to Ocwen's attempts to collect payments on the loan and foreclose on the property. *See* Doc. 69, 3d Am. Compl., ¶¶ 16–17. Wease filed his original complaint on October 10, 2013, and amended his lawsuit three times over the course of eighteen months. *See* Docs. 1, Original Compl.; 8, Am. Compl.; 32, 2d Am. Compl.; 69, 3d Am. Compl. In its final form, Wease's complaint alleged, in relevant part, claims for breach of contract, unclean hands, violation of the Real Estate Settlement Procedures Act ("RESPA"), and violation of the Texas Debt Collection Practices Act ("TDCA"). *See* Doc. 69, 3d Am. Compl., ¶¶ 19–53. Ocwen filed an answer and counterclaim for foreclosure. *See* Doc. 70, Answer.

On April 20, 2017, the Court entered an amended final judgment[4] in Ocwen's favor on all Wease's claims and on Ocwen's counterclaim. *See* Doc. 83, Final J. Wease appealed, and on March 7, 2019, the Fifth Circuit issued an opinion reversing the Court's judgment regarding Wease's

---

[3] The Note was originally payable to WMC Mortgage Corporation, but was later assigned to Defendant/Counter-Plaintiff Wells Fargo Bank, N.A. *See* Doc. 70, Defs.' Answer, ¶ 13. Defendant/Counter-Plaintiff Ocwen Loan Servicing, LLC acted as servicing agent of Wells Fargo with respect to Wease's loan. *Id.*

[4] The Court originally granted summary judgment as to Wease's claims only. *See* Doc. 82, Order. Wease appealed and the Fifth Circuit determined that, because the Court did not resolve Ocwen's counterclaim, it was without appellate jurisdiction. *See* Doc. 99, Order of USCA, 3. The Court thereafter amended its judgment to find in Ocwen's favor on its foreclosure counterclaim as well. *See* Doc. 108, Am. Final J.

breach-of-contract claim and Ocwen's foreclosure counterclaim, and affirming the Court's judgment on all other claims. *See Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019).

After the case proceeded to trial, the jury returned a verdict finding in Ocwen's favor on both Wease's breach-of-contract claim and Ocwen's foreclosure counterclaim. *See* Doc. 163, Jury Verdict. The Court entered final judgment[5] based upon the jury's verdict, which reads as follows:

> Defendants/Counter-Plaintiffs are entitled to judgment against Plaintiff/Counter-Defendant for his breach of the Loan Contract in the amount of **$179,304.36**, pre-judgment interest and post-judgment interest at the Note rate of **6.625%**, as well as costs of court and attorney's fees to be decided by the Court on separate motion pursuant to Federal Rule of Civil Procedure 54 . . . . The Judgment against the Plaintiff is in rem and enforceable only through [Ocwen's] security interest . . . .

Doc. 169, Order & Final J., ¶ 3.

On August 12, 2021, Ocwen filed the instant motion for attorneys' fees (Doc. 193). The motion is fully briefed and ripe for review.

## II.

## LEGAL STANDARD

An award of attorneys' fees "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Texas law provided the rule of decision in this case. *See* Doc. 169, Order & Final J. In Texas, attorneys' fees are recoverable when provided for by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Attorneys' fees in this matter are provided for by contract.[6]

---

[5] Wease filed a third appeal challenging the Court's final judgment and the Fifth Circuit affirmed. *See* Doc. 192, J. of USCA.

[6] The Note, signed by Wease, provides that Ocwen is entitled to "be paid back by [Wease] for all of its costs and expenses enforcing this Note to the extent not prohibited by applicable law . . . [including] reasonable attorneys' fees." Doc. 195-1, Texas Home Equity Note, § 6(E). The Security Instrument, also

The preferred method of federal courts calculating reasonable attorneys' fees under Texas law is the lodestar method. *See Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 852 (S.D. Tex. 2017) (citing *Rappaport v. State Farm Lloyds*, 275 F.3d 1079 (5th Cir. 2001) (per curiam)). The lodestar method is a two-step process. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, courts calculate the lodestar by multiplying the "number of hours reasonably expended . . . by the prevailing hourly rate in the community for similar work." *Id.* at 392 (internal quotation marks omitted). Texas courts then apply the eight *Arthur Andersen* factors[7] to determine whether the lodestar should be adjusted. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). "The Supreme Court of Texas has recognized that 'the base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations.'" *Murphy Oil USA, Inc. v. Love's Travel Stops & Country Stores, Inc.*, 2021 WL 2077648, at *2 (N.D. Tex. May 24, 2021) (quoting *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 500 (Tex. 2019)).

---

signed by Wease, further provides that "[Ocwen] shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence." Doc. 195-2, Texas Home Equity Security Instrument, § 21.

[7] They are: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client;(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered." *Arthur Andersen*, 945 S.W.2d at 818.

## III.

## ANALYSIS

Ocwen seeks $264,307.00 in attorneys' fees. *See* Doc. 193, Mot., 8. Wease's sole objection in response is that Ocwen wrongfully requests $61,991.94[8] in attorneys' fees billed between May 19, 2017, and March 7, 2019, which Wease posits were incurred litigating Wease's partially successful appeal to the Fifth Circuit and are therefore not recoverable. *See* Doc. 195, Resp., ¶¶ 3–5. Below, the Court first considers whether Ocwen's fee request for work performed before May 19, 2017, and after March 7, 2019, is reasonable and concludes that it is. The Court then addresses the parties' dispute concerning fees for work performed between May 19, 2017, and March 7, 2019.

A.  *Fees Incurred Before May 19, 2017, and After March 7, 2019*

Ocwen seeks $202,315.06 in attorneys' fees for work performed before May 19, 2017, and after March 7, 2019. *See* Doc. 193-1, Billing Records, 10–35, 150–227. These fees represent 654.6 hours of attorney and professional time billed at rates ranging from $115.00–$365.00 per hour. *See id.*; Doc. 193, Mot., 6. Wease does not dispute these fees, and the Court determines that they are reasonable. *See, e.g.*, *Sw. Reinsure, Inc. v. Comfort Auto Grp. USA, LLC*, 2021 WL 2414847, at *4 (N.D. Tex. June 14, 2021). Further, the Court does not find cause to adjust this amount due to any of the *Arthur Andersen* factors. Accordingly, the Court awards Ocwen $202,315.06 in attorneys' fees for work performed before May 19, 2017, and after March 7, 2019.

---

[8] Wease's Response calculates $62,105.94 of Ocwen's request as chargeable to the disputed time frame. *See* Doc. 195, Resp. ¶ 5. However, this figure appears to mistakenly include a 0.4-hour billing entry worth $114.00 from March 26, 2019. *See* Doc. 193-1, Mot., 152, 154. Accordingly, the Court considers $61,991.94 to be the amount in dispute.

B.     *Fees Incurred Between May 19, 2017, and March 7, 2019*

The Court now turns to the disputed fees for work performed between May 19, 2017, and March 7, 2019. There are three questions presented: first, whether and to what extent Ocwen can recover fees for work performed on Wease's partially successful appeal; second, if the fees are only partially recoverable, whether Ocwen was required to segregate its fees; and third, if Ocwen failed to segregate its fees as required, what effect this has on its fee request.

Below, the Court concludes that: (1) Ocwen can recover only its appellate fees attributable to the claims on which Wease's appeal was unsuccessful; (2) Ocwen was required to segregate its fees and failed to; and (3) Ocwen should be given the opportunity to segregate its fees.

1.     Recoverability of Fees Incurred Litigating Wease's Appeal

As introduced above, Wease contends that Ocwen's fee request includes unrecoverable fees incurred litigating Wease's second appeal. Doc. 195, Resp., ¶ 5. Wease reasons that, "[b]ecause [he] prevailed on his second appeal, Defendants/Counter-Plaintiffs are not entitled to this amount." *Id.* Ocwen responds to this argument by first pointing out that Wease's appeal was only partially successful since the Fifth Circuit affirmed summary judgment as to all claims except for its counterclaim and Wease's breach-of-contract claim. Doc. 196, Reply, 2. Second, Ocwen contends that the Note entitles it "to reimbursement for all 'costs and expenses in enforcing this Note . . . includ[ing] . . . reasoanable attorneys' fees." *Id.* at 3. Therefore, according to Ocwen, "any reasonable attorney's fees incurred by [Ocwen] were contractually agreed to by Wease and he has no grounds for contesting such an award." *Id.* While each party is correct to some extent, both parties reach the wrong conclusion.

To start, Wease is correct that, in Texas, "[a]n appellee may not recover attorney[s'] fees for work performed on any issue of the appeal where the appellant was successful." *Jacks v. G.A. Bobo*, 2011 WL 2638751, at *5 (Tex. App.—Tyler June 30, 2011, no pet.). "To do otherwise would penalize a party for pursuing a meritorious appeal." *Robertson v. Robertson*, 2017 WL 6546005, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 21, 2017, no pet.); *see also Schlueter v. Schlueter*, 975 S.W.2d 584, 590 (Tex. 1998) ("[A] party should not be penalized for taking a successful appeal."). "Rather, [an appellee] may only recover 'fees for work performed on any issue of the appeal where the appellant was unsuccessful.'" *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*, 2017 WL 4182292, at *10 (Tex. App.—Beaumont Sept. 21, 2017, no pet.) (quoting *Jacks*, 2011 WL 2638751, at *5); *see Lynch v. Lynch*, 540 S.W.3d 107, 136 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). This general rule applies even where, after reversal, an appellee is successful on the remanded claims. *See Melton v. CU Members Mortg.*, 586 S.W.3d 26, 37 (Tex. App.—Austin 2019, pet. denied) (remanding the issue of attorneys' fees where it was "undisputed that the amount of fees awarded by the district court included fees for preparing for the first appeal . . . , where Appellees were not the prevailing party"). Applied here, this means that Ocwen is not entitled to recover fees for appellate work performed on the breach-of-contract and foreclosure issues where Wease's appeal was successful.

However, Ocwen correctly points out that Wease's appeal was only successful as to Wease's breach-of-contract claim and Ocwen's counterclaim. *See Wease*, 915 F.3d at 997. Because Ocwen was successful as to the remaining claims—Wease's RESPA, TDCA, and "unclean hands" causes of action—Ocwen is entitled to recover its attorneys' fees related to these claims. *See Jacks*, 2011 WL

2638751, at *5 ("[A]n appellee may still recover attorney[s'] fees for work performed on any issue of the appeal where the appellant was unsuccessful.").

To the extent Wease argues that Ocwen's appellate successes were not covered by the Security Instrument and Note, the Court disagrees. Both the Security Instrument and the Note provide that Ocwen is entitled to reasonable attorneys' fees incurred in their enforcement. *See* Doc. 195-1, Texas Home Equity Note, § 6(E); Doc. 195-2, Texas Home Equity Security Instrument, § 21. For one, Wease attempted to preemptively thwart Ocwen's attempt to foreclose by bringing the affirmative defense of unclean hands as an affirmative cause of action. *See* Doc. 69, Pl.'s 3d Am. Compl., ¶¶ 28–30. Thus, it was clearly necessary that Ocwen defend against this claim in order to enforce the Security Instrument.

Whether Wease's unsuccessful RESPA and TDCA claims are recoverable fees under the Note and Security interest is a closer question. However, Wease's pleadings establish that he sought to use his RESPA and TDCA claims as vehicles for inhibiting Ocwen's right to foreclose. *See* Doc. 69, Pl.'s 3d Am. Compl., ¶¶ 30 (referencing Ocwen's alleged violation of the TDCA as an example of Ocwen's purported unclean hands), 52 (arguing that "[a] breach of RESPA is a breach of the Security Instrument"). Consequently, it was reasonably necessary that Ocwen defend against these claims in order to enforce its rights as a lienholder. Thus, Ocwen is entitled to its fees incurred in successfully defending Wease's appeal regarding the RESPA and TDCA claims.

To summarize, the Court finds that Ocwen may not recover fees incurred litigating Wease's successful appeal of his breach-of-contract claim and Ocwen's foreclosure counterclaim. Ocwen is, however, entitled to recover its fees related to the RESPA, TDCA, and unclean hands claims that were affirmed by the Fifth Circuit.

2.  Segregation of Fees

Having determined that Ocwen's fee request includes a combination of recoverable and unrecoverable fees, the Court now considers whether Ocwen was required to segregate its fees.[9] Ocwen argues that "the facts and circumstances were the same or nearly identical as to each cause of action," and therefore "segregating what fees were incurred in prosecuting each separate claim is an impossibility." Doc. 196, Reply, 2–3. Wease's Response is silent regarding the segregation of fees and instead relies entirely upon Wease's assertion that none of the fees from his second appeal are recoverable. Doc. 195, Resp., ¶ 5.

Generally, parties seeking attorneys' fees are required to segregate their fees between recoverable and non-recoverable claims. *Chapa*, 212 S.W.3d at 311. However, fees need not be segregated where "discrete legal services advance both a recoverable and unrecoverable claim." *Id.* at 313–14. "Intertwined facts alone do not make fees for unrecoverable claims recoverable." *Chevron Phillips Chem. Co.*, 2017 WL 4182292, at *6 (citing *Chapa*, 212 S.W3d at 313–14). "The party seeking to recover attorneys' fees bears the burden of demonstrating segregation is not required." *Id.*

Here, it was Ocwen's burden to show that segregation was unnecessary. *See Chapa*, 212 S.W.3d at 313–14. However, Ocwen's briefing merely recites the exception to the general segregation requirement and concludes that it applies because "the facts and circumstances were the same or nearly identical as to each cause of action." Doc. 196, Mot., 2–3. But, as stated above, intertwined facts alone are not enough to avoid the general duty to segregate. *See Chevron Phillips Chem. Co. L.P.*, 2017 WL 4182292, at *6. And even if the claims were "dependent upon the same set of facts or circumstances . . . that does not mean they all required the same research, discovery,

---

[9] Ocwen does not argue that it did, in fact, segregate its fees. *See* Doc. 193, Mot.; Doc. 196, Reply.

proof, or legal expertise." *Chapa*, 212 S.W.3d at 313; *see Tijerina v. Wysong*, 2017 WL 506779, at *8 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.). Accordingly, the Court finds that Ocwen was required to segregate its fees.

In finding so, the Court does not suggest that each task performed by Ocwen's attorneys on Wease's second appeal is wholly attributable to a recoverable or unrecoverable claim. To the contrary, it is likely that at least some portion of the work advanced both recoverable and unrecoverable claims. But to the extent that fees are attributable to a recoverable claim, "they are not disallowed simply because they do double service." *Chapa*, 212 S.W.3d at 313.

The Court also notes that it is not requiring Ocwen to offer "more precise proof for attorney[s'] fees than for any other claims or expenses." *See id.* at 314; *Anderton v. Green*, 2021 WL 1115549, at *3 (Tex. App.—Dallas Mar. 24, 2021, no pet.) ("Segregation evidence need not be extensive to be sufficient."). For example, it is sufficient in some instances to provide an opinion as to the amount of fees that would have been incurred in the absence of the unrecoverable claims. *See Chapa*, 212 S.W.3d at 314. But absent any attempt to identify the amount of fees attributable to the recoverable claims, the Court cannot discern an appropriate fee award for the work done on Wease's second appeal.

### 3. Effect of Ocwen's Failure to Segregate

Finally, the Court considers the appropriate remedy for Ocwen's failure to segregate its fees. Wease's briefing argues only that none of the disputed fees are recoverable and does not address the consequence of the Court finding that the fees are partially recoverable. *See* Doc. 195, Resp., ¶¶ 3–7. Ocwen's Reply states that "a failure to segregate fees does not require an outright denial of fees." Doc. 196, Reply, 3. The Court agrees with Ocwen.

A party's "failure to segregate . . . attorney[s'] fees does not mean [they] cannot recover any fees at all. Unsegregated attorney[s'] fees for the entire case [is] some evidence of what the segregated amount should be." *Farmers Grp. Ins., Inc. v. Poteet*, 434 S.W.3d 316, 333 (Tex. App.—Fort Worth May 22, 2014, pet. denied) (citing *Chapa*, 212 S.W.3d at 314). Nevertheless, because neither party here attempted to identify the amount of fees attributable to the recoverable claims, the Court determines that it is appropriate to grant Ocwen the opportunity to attempt to segregate its fees. *See Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 992 F.3d 336, 346 (5th Cir. 2021) (noting that a district court's "traditional discretion to determine the appropriate amount of fees . . . [does] not extend to denying . . . fees entirely" for failure to segregate); *McAnelly v. Brady Med. Clinic, P.A.*, 2009 WL 1161021, at *2 (Tex. App.—Austin Apr. 30, 2009, no pet.) (citing *Chapa*, 212 S.W.3d at 314; *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)) (reversing a district court's decision to award a prevailing party one-third of his unsegregated attorneys' fees without granting him the opportunity to segregate his fees). Accordingly, the Court's denial of Ocwen's motion as to fees incurred between May 19, 2017, and March 7, 2019, is without prejudice, and Ocwen is instructed to submit an amended motion segregating its fees for the disputed time frame.

## IV.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Ocwen's Amended Motion for Attorneys' Fees (Doc. 193). Specifically, the Court **GRANTS** Ocwen's Motion as to fees claimed for work performed before May 19, 2017, and after March 7, 2019, and awards Ocwen $202,315.06 in fees for this time period, enforceable only through Ocwen's

security interest. However, the Court **DENIES WITHOUT PREJUDICE** Ocwen's Motion to recover fees for work performed between May 19, 2017, and March 7, 2019. Ocwen is further **ORDERED** to file an amended motion addressing the deficiencies identified by this Order within fourteen (14) days of this Order.

    **SO ORDERED**.

    SIGNED: October 27, 2021.

_____<br>
JANE J. BOYLE<br>
UNITED STATES DISTRICT JUDGE